Gardner v. Baker.

---

## GARDNER v. BAKER, Guardian.

25 343
101 262

1. Fraudulent and voluntary conveyance: SUBSEQUENT CREDITORS. A conveyance which is fraudulent as well as voluntary, is void as to subsequent as well as existing creditors.

2. —— HOMESTEAD : ABANDONMENT. Where a wife dies invested with the title to the homestead under a voluntary conveyance from the husband, which is void as to creditors, and the husband and children surviving her afterward abandon the homestead, it may then be subjected to the payment of such creditors' claims.

3. —— WHO ARE SUBSEQUENT CREDITORS. Where a debtor executes a voluntary conveyance to his wife, and afterward assumes in place of his own debt, existing at the time of such conveyance, one owing by his creditor to a third party, the latter will be regarded as an existing rather than a subsequent creditor, and may attack the validity of the conveyance.

4. Release : OF ONE PARTNER. A partnership creditor may, by the aid of restraining words, release one partner from further liability, without affecting his right as against the other partner.

Gardner v. Baker.

*Appeal from Decatur District Court.*

THURSDAY, JULY 23.

THIS controversy relates to $66\frac{45}{100}$ acres of land, being a part of 160 acres, near Leon, in Decatur county. The entire quarter section was entered by Daniel Bradley in 1851. On the 8th of October, 1857, he conveyed it to his wife, Marietta, who died in October, 1858, leaving the husband and the defendants (their minor children), her surviving. In 1855 the husband formed a business partnership with one John W. Gardner, for the purpose of carrying on a general mercantile business. He held in his own name at this time, this 160 acres of land, as also some other real estate, with a moderate amount of personal property, consisting of horses, cattle, farming implements, etc. The partnership continued until in November or December, 1858. During its continuance he acquired some other real estate, in his own name, and some jointly with his partner, and they had in goods and outstanding debts from $2,500 to $3,000. They also contracted debts, and were owing in 1857, at the time of the conveyance to the wife, not far from $3,500. Among others, they were indebted to Howard & Co., Wallace, Sterling & Co., and one Morrison, to the amount of $2,500. One forty of this land had, before the conveyance to the wife, been mortgaged to the school fund; which mortgage was afterward foreclosed and the land sold. After the death of the wife, the remaining 120 acres were sold under a judgment in favor of Howard & Co., on their debt, and such proceedings subsequently had (which need not be refered to at length), that they were adjudged to own a specific portion, being the husband's share, leaving to the heirs the land now in controversy. See *Bridges, Guardian*, v. *Howard & Co.*, 18 Iowa, 116.

Gardner v. Baker.

Plaintiff afterward becoming the owner of the balance due on these three debts (all in judgments), and the property having been sold under one of them, filed his bill in equity to set aside the conveyance to the wife, as being fraudulent, and made with the intention to hinder and delay creditors.

The referee, to whom the cause was referred, after examining all the testimony (and it is most voluminous, covering hundreds of pages), found in favor of plaintiff, recommended that the deed to the wife be set aside, and that plaintiff's title be quieted. This report was fully confirmed in the District Court, and defendants appeal.

*J. S. Warner* and *Samuel Forry* for the appellants.

*J. W. Warner* and *J. W. Perry* for the appellee.

WRIGHT, J.—That Daniel Bradley was largely involved at the time of conveying this land to his wife, can admit

FRAUDULENT AND VOLUNTARY CONVEYANCE: subsequent creditors.

of but little doubt. A farmer in fair circumstances — like many others, he was carried away with the delusive thought that there was an easier road to competence, if not fortune— bought goods and entered into trade, just before the perilous financial times of 1857–8. His bills payable increased faster than those receivable. He found his home, acquired by the labor of years, in danger of sacrifice; and, forgetting that he should be just to his creditors, he generously conveyed it to his wife, with the hope of saving something from the impending crash. It is true the firm then held in their joint and individual names property variously estimated at from $4,000 to $6,000. But for the general depreciation of property it is possible they might, by good management and strict economy, have paid their debts. They did not, however. This land was a part of the fund to which creditors had a right to look.

The conveyance to the wife was a fraud into which they could inquire. The debts were not inconsiderable as compared with the property. The direct tendency of the conveyance was to impair the rights of creditors.

This is clear enough on the facts, and indeed, scarcely admits of controversy. Not only so, but there is, to our minds, clear proof that there was an actual intention to defraud. The grantor spoke of his indebtedness; of his purpose to so dispose of the farm as to save something to his family; made the deed without the knowledge of any one but the acknowledging officer, who was also the deputy recorder; enjoined secrecy upon him; after the wife's death, consulted counsel upon his right to set the same aside; was told that creditors might, but that he could not; he continued to use, occupy and enjoy it as before, until he left the country in 1860; there was no consideration; and we entertain no doubt therefore that the conveyance was actually fraudulent; that he was regarded and treated as the owner after as well as before the making of the deed, and that creditors, relying upon his apparent and asserted ownership of the same, continued to give him credit. It was not only voluntary, but fraudulent; and the wife, so far as she knew any thing about it, participated in such intent.

We have said that the deed was voluntary. There is an attempt to show that the grantee had $200 from her father in money and property, and that the land was entered as hers and for her, with her means; under an agreement that it was hers; that it should be conveyed, and that it accordingly was conveyed by this deed pursuant to such agreement, and that hence, in view of her equities, the conveyance should not be set aside. With every disposition, under some of the peculiar hardships of this case, to regard this claim with favor, we confess our inability to see the foundation for it in the evidence. The gift by the

father, if ever made, was as early as 1842 or 1843. This land was entered six or seven years afterward. It was held in the husband's name until in 1857; he, in the meantime making valuable improvements upon it; mortgaging it and in every way doing any thing and everything with it that any one does with his own property.

The fact of the advancement rests exclusively upon his testimony, and he certainly does not stand in the most favorable light as a witness. The property was worth from $1,500 to $2,000 at the time he conveyed the same. Not until this controversy arose, or until creditors began to question the validity of the deed, was this advancement set up or relied upon to sustain it. The wife, in conversation with two witnesses at least, made statements tending strongly to show that she had nothing from her father. So that we cannot, consistently with our view of the evidence, believe that this claim has any foundation in fact. And, so finding, it becomes unnecessary to consider the rights of these children if the equity claimed had been established.

But it is said that a portion of this land was the homestead of these parties; that it was exempt from their 2. —— debts, and hence, whatever the purpose or <span>homestead: abandonment.</span> intention in making the conveyance, to this extent the defendants' rights should be protected. The referee held that as the deed was void for fraud, it vitiated the whole transaction, and would not be upheld even as to that to which the creditors otherwise might have no claim. Far from concurring in this view — we answer the point upon two other grounds. The first is, that there is no evidence as to where or in what part of the 160 acres the homestead was situated. It may have been on the forty mortgaged or sold under the school fund mortgage; or possibly a part of that assigned to Howard & Co., in the partition made between them and

the heirs. The second is, that the husband and children, after the death of the wife, in 1860, abandoned the land, removed to California, and have never since used or occupied the same. Had they remained, it would have been protected from their debts, as exempted property, without reference to the deed. Having abandoned it, the deed can give them no greater rights.

It is also insisted, that plaintiff is a creditor, subsequent in date to the making of the deed, and especially as to the 3. —— who are claim under which the referee found that he subsequent creditors. had a clear right to contest its validity. The facts are, that the firm owed a debt to one Morrison, amounting to say $1,000, prior to the deed. After this, Morrison bought some land, paid for it in a portion of this claim, and, by mutual arrangement, Bradly and Gardner made a note therefor to their substituted creditor, with mortgage to secure the same. And 'for the unpaid balance of this last note and mortgage the property in controversy was sold, and under it plaintiff claims, having bought the judgment and sheriff's certificate.

Upon these facts, plaintiff is not to be treated as a subsequent creditor. If so, however, we have seen before that the conveyance was voluntary; that there was actual fraud, and that, except in mere name, the property still belonged to the husband. This being true, even as a subsequent creditor he could be heard to question its good faith.

Finally, we are told, that plaintiff, by an agreement with the other partner (John W. Gardner, and who does 4. Release: not appear to be in any way related to plaintof one partner. iff, though of the same name) released him from all liability, and hence discharged any lien he might have had upon this land and any right to make the debt from the property of the other member (Bradley). Without setting the contract out at length, it is sufficient to

say, that by its terms it provides, that plaintiff was still to hold all liens upon the real property of the other partner (Bradley), and that said compromise was not to affect the same. Not only so, but he afterward obtained the title of the purchaser under the sheriff's sale. The case of *Seymour* v. *Butler* (8 Iowa, 304) is fully in point. And see the cases there cited, which fully support plaintiff's right, under the terms of his contract, to hold the other partner.

We are thus, after noticing the several objections urged against the decree below, brought to the conclusion, that there was no error in holding this land subject to the payment of the debts of Daniel Bradley. And yet we confess that plaintiff, in view of several matters disclosed in the record, is not entitled to the most favorable consideration. Because of this; because Bradley is not a party to this proceeding; because defendants are minors; because the property was sold for a sum very greatly under its real value; because there seems to have been a studied effort to confuse and becloud the title, which necessarily deterred persons from bidding; and because, in our opinion, no one will be injured, but the rights of these children possibly the more certainly protected, — we have concluded to modify the decree so far as to order the land to be resold. The cause will therefore be remanded, to the end that an account may be taken of the amount due plaintiff upon his several claims, after deducting all credits, including the $550 received from the other partner, John W. Gardner; and, when the same is ascertained, that an order may be made directing the property to be sold to satisfy any balance so remaining — the liens of judgments, and all incumbrances in plaintiff's favor, in the meantime remaining undisturbed.

With this modification the judgment below is

Affirmed.